Thank you very much, Your Honors, for accommodating my conflict in this courthouse. Gretchen Fuselier, appearing on behalf of the petitioner Raymond Rico. If it please the Court, I'm first going to address my attention to the issue relating to the removal of Mr. Sanchez, a juror, during deliberations in Mr. Rico's trial. Although the United States Supreme Court has not specifically addressed the issue relating to California Penal Code Section 1089, which provides for the removal of a juror at any time for cause, we have relied on the due process cases out of the United States Supreme Court, such as Irvin v. Dowd, which we have cited in our briefs, which stands for the proposition that due process requires under the Constitution that Mr. Rico be tried by a jury who is fair, impartial, and unbiased. Also, the case of Jordan v. Massachusetts reinforces and restates that proposition. Based on that, we have submitted an argument on the issue of whether or not there was sufficient cause to remove Mr. Sanchez so that it did not impede and overrun Mr. Rico's constitutional right to be tried by the impartial, unbiased jury that had been agreed on by both the defense and the prosecutor. When one of the jurors sent a notification to the trial judge indicating that Mr. Sanchez was refusing to deliberate, as the facts cited in our briefs indicates, the judge cited the complaining juror and Mr. Sanchez in the chambers along with counsel. The complaining juror indicated that although Mr. Sanchez began the deliberation participating and discussing the facts, Mr. Sanchez came to the conclusion that there was not sufficient force for a robbery. When the complaining juror was asked by the judge, does he communicate? Is he speaking? Is he deliberating? He said, yes, somewhat. One of the attorneys asked the juror, are other jurors more vocal? And he said, well, some are quieter, some are more vocal. And the complaining juror indicated that he, of course, was one among the more vocal jurors. We have cited the cases of Sanders v. Lamarck and Symington. And although the state has submitted a 20HJ letter indicating the case of Rios, I believe, distinguishing Symington as not having been ruled on a constitutional basis, but rather on a federal rule of law, our position is that it all dovetails back to the constitutional due process argument. And where there is insufficient cause, we don't believe that the juror, Mr. Sanchez, should have been removed. Kagan. Well, let's assume that you're right, that there's sufficient constitutional law about removing someone without cause. How do we judge, in an AEDPA situation especially, the question of whether there was an adequate basis for removing? Your argument is not that you can't remove a juror, right? You have to be able to remove under some circumstances. What are the circumstances? The circumstances are when a juror is no longer impartial, when a juror becomes biased or is of a state of mind that he is not liberating fairly. When we look at the communications and the dialogue between the Court and Mr. Sanchez, he says, the Court says, at this time, are you refusing to discuss the facts with the other jurors in that your mind has already been made up? Juror Sanchez, my decision is already made. Therefore, you do not feel it's necessary that you further discuss the evidence with the other jurors. What you're trying to do is change my mind as to the evidence, and I don't feel that the evidence shows that this lady was forced. So why isn't that a statement that he's made up his mind and he's not going to deliberate anymore? Or at least why isn't it reasonable for somebody to think that's a statement? Well, because Mr. Sanchez also indicated after the judge in chambers re-read to him the duties of the juror, Mr. Sanchez indicated that he had done that. In response, Mr. Sanchez said, quote, let me correct the comment there. I employed it as you stated, and I came out with my decision. His decision was not in contravention of the instructions provided to him by the Court according to Mr. Sanchez's explanation to the judge. And for that reason, when the judge indicated in his reasoning for dismissal, for dismissal of Sanchez, the judge indicated that I would say for the record that in having him present in court, his demeanor is of tremendous hostility, his gestures in court, the pointing of the finger and the other gestures that he made, the inflections of his voice. He appears to be a very hostile person. One might be hostile, and at the same time, according to the complaining juror, he may even be somewhat of a jerk in the deliberations. But if he remains fair and unbiased, that is the standard that the U.S. Supreme Court has referenced. And from the statement of the Court — Wasn't he the — didn't he say, or isn't there some evidence that during deliberations he said we are all robbers of God unless we tithe and all that? He did — he did acknowledge that he said that, Your Honor. However, he also indicated that that was a statement that he made on the aside after he felt that he had — The judge heard this evidence, and he made his ruling. And I would think a better argument would be on how the jury was instructed after the substitution was made. The judge didn't instruct the jury that they were to start anew and that they would review the evidence together. And — There was no instruction, Your Honor. There was no instruction on that. And they went out and came back in 10 minutes with a guilty verdict. Absolutely. And I believe we referenced that in our brief, which indicates that, as we argued, there may have been some element of intimidation by the replacement juror not having a record of what happened in the jury deliberation room. Perhaps he became aware, based on the version provided to him by the complaining juror, of what happened and felt compelled to quickly come to a verdict consistent with what perhaps the majority — Well, it doesn't sound in that short period of time as if they really had a chance to consider the evidence as a group because you really have a new jury here. The jury was reconstituted. Your Honor, I — I mean, you know, the fact that it's 10 minutes or — I mean, this person sat there as an alternate juror, right? That's correct, Your Honor. And they may have apparently made up — you could argue made up their mind or his mind just listening to the case and was convinced that the defendant was guilty. But anyway, this seemed to me your stronger argument is that the court didn't give proper instructions to the jury after it was reconstituted. Yes, Your Honor. You've got another issue, haven't you? Yes, Your Honor. And that's — before going to the — moving on to the three strikes issue, I would like to say that I think it's indicative that Mr. Sanchez must have considered the force issue somewhat consistently and relevantly with the instructions because on direct appeal, the State Court of Appeals reversed the robbery and indicated there was not sufficient force.  with the instructions because on direct appeal, the State Court of Appeals reversed the robbery and indicated there was not sufficient force. But it is true that he turned out to be right. That's correct. But the question is doesn't that arguably lead to a harmless error? That is, the issue on which it appears that he was voting to acquit, your client was eventually acquitted of, essentially. So there's no indication that there was a dispute as to the other crime on which he was convicted.  And so when the complaining juror came into chambers, he made it very clear, that's in the record, that the point of contention was the level of force. So why doesn't that just mean the whole thing doesn't matter? Because he was voting to convict, apparently, on the grand theft. When the other juror came in, the alternate, and I agree with Judge Pragerson that the procedure seemed effective, but since there was a reversal eventually on the force question, why does it matter? In other words, how is your client harmed by all this? Well, he's harmed because he was prevented from having the individual deliberations by the jury. As to the force question where he might otherwise have had a hung jury and therefore been convicted of grand theft, that's all he was convicted of. If he were convicted of anything, he may not have been convicted. That's what I'm asking you. And doesn't it appear, you just said it did, that the dispute was over the force question, not the grand theft question? Yes, that's correct. But we don't know if Mr. Sanchez would have voted guilty on any charge. I guess maybe your argument would be that even though that might be the case, if a person is wrongfully removed from the jury, that's a structural error, and you don't look to harmless error, do you? I don't believe so, Your Honor, although we did argue harmless error. But it does seem more consistent with a structural error. But if you don't have a fairly constituted jury and the Constitution, it's structural. It's not? That's correct, because it goes to the fundamental fairness and impartiality of the jury. Moving on in the remaining time that I have to address the three strikes issue. Mr. Ramirez, he was sentenced under the three strikes law because technically he did have three qualifying strikes. His three priors consisted of basically all purse snatchings without any violence involved. Although the State does indicate in its brief that there was a stabbing. But as we've indicated in our brief, the judge made it very clear on the record that Mr. Rico was not responsible for any stabbing during any of the purse snatchings. There was someone else with him, but there was no determination that he had inflicted great bodily injury by a stabbing. Given that background, we believe that Mr. Rico's case is consistent with the recent case of Ramirez v. Castro. No, Ramirez-Castro is his name. Yes, Your Honor, exactly. Ramirez-Castro v. United States, excuse me. And the similarities that parallel Mr. Rico's case in the Castro case, Mr. Castro, he had a series of priors that did not include violence, as did Mr. Rico. I thought Mr. Castro had just this one conviction for two nonviolent thefts. I think he had more. He had a prior that I believe involved his going into a department store. Which was a theft, trying to find the exact priors. They all arose out of one indictment, or one charging instrument. One was the shoplifting of a Lucky's grocery store, and the only force related in that offense was that the getaway car was driven by a third person and ran over a security guard's foot, causing minor injury, which the courts did not believe rose to the level of sufficient violence. And the second count was the September 1991, which was approximately eight months later. He shoplifted from a Kmart's department store, and in that offense, the force related to his pushing a security guard away with his open hand, and he ran out of the store. In 1996, Ramirez shoplifted a $199 BCR from a Sears store, and when the security guard approached him, he surrendered. In Mr. Rico's case, he had three priors, all were purse snatching, and there is evidence that indicates that he was motivated by the needs to support a heroin drug addiction that he had. However, the parallel with Ramirez is that the lengthy sentence that Mr. Rico received was as disproportionate based on his background and his core offense, which was purse snatching, as it was in the Ramirez case. What about this Ewing versus California case decided last year? Ewing got a 25-year-to-life sentence based on a grand theft person, and the court held that that sentence didn't violate the Eighth Amendment. Your Honor, that's true, and I believe in Ewing that his priors were different from the priors that we're confronted with in the Rico case. Mr. Rico's priors are not violent, and I believe that we would argue that is a distinguishing feature. I'm not talking about a grand theft person. You snatch a purse away from someone, a grand theft person, and people get injured. Snatch the purse away, you know, we get knocked down, they fall down. People do get injured. However, we think that that certainly is less of an injury than a security guard's foot being run over, and we don't think that the injury in the cases relating to Mr. Rico occasioned any more force than the force necessary to remove a purse from the person holding it and transferring possession from the owner to Mr. Rico's possession. Do you want to save a few minutes of time for rebuttal? Yes, Your Honor. By the way, I apologize. You were correct. It is Ramirez v. Castro, and I had written it down the other way wrong. So you were correct, and I was wrong. All right. Thank you, Your Honor. I looked at the case, and I thank you very much for the... All right. So... We look at both the inter-jurisdictional and the intra-jurisdictional comparisons in the Rico case. For the inter-jurisdictional cases, we see that many more serious offenses are given lighter sentences, and as we pointed out in our brief, there is even a lighter element to the sentences for crimes such as manslaughter, rape, kidnapping, because... in most other jurisdictions, we did indicate that there was the exception of Texas, and Texas always seems to fall into an exception when it comes to these types of comparisons. However, given the parole benefits that most other defendants would have with more serious crimes, their sentence even becomes much lower than what Mr. Rico... Yeah, we have all that. Thank you very much. Good morning. Douglas Danzig, Deputy Attorney General, on behalf of Respondent. Before I proceed to any other portion of the argument, I would like to correct something that was in the Respondent's brief in this case that opposing counsel has pointed out, and that is when we indicated that Mr. Rico had been involved in a case in which he had stabbed the victim, that is an incorrect statement. The correct statement should have been he was involved in a crime or a robbery in which the victim was stabbed twice. There was no determination as to whether Mr. Rico was the perpetrator of the stabbing or not. On to the more fundamental questions. How did that happen? How did they mistake it? They put the wrong statement in there. I simply missed it on proofreading, Your Honor. What? I simply missed it on proofreading. On proofreading. Turning to the more fundamental questions, which is, once again, we find ourselves in a case in which the relationships between the federal courts acting, reviewing a case under the AEDPA and what the state courts have done in making a determination under state law. The fact of the matter is here is that even counsel has conceded there is no clearly established rule that is narrow enough to find application here in terms of the case. Well, you know, I mean, I assume, again, that there's actually no Supreme Court case on removing jurors, period. Pardon me? There's no Supreme Court case about removing jurors, period. And in addition, panels of this Court have found that it's not a constitutional issue. But it has to – I mean, at least in an extreme case, I don't think anybody would doubt that the existing Supreme Court law regarding the need for an impartial jury would be sufficient. I mean, if, for example, you know, this judge had said, you know, I'm removing you because you're voting to acquit and everybody else is voting to convict and so I'm removing you, I assume that that would be a constitutional violation and you would agree, despite the fact there's no on-point Supreme Court case. I would not agree. Really? You think that if that happened, that we couldn't say, obviously encompassed within the Supreme Court's rules, that the right to an impartial jury is the right not to have the judge remove somebody who's voting in a way that he doesn't care for? I think that the dissent in – pardon me – Sanders, I believe, pointed out the problem with that line of reasoning, and that is that there is no U.S. constitutional right to a unanimous jury. It's a matter of – in California, the right to a unanimous jury is a matter of the state constitution, and there may be a liberty in that question, and I certainly have no dispute or it would be ridiculous to argue that the Supreme Court's pronouncements on the right to an impartial jury and the constitutional basis for that, that that is not the state of the law, because it certainly is. But if a particular court removed a jury under the hypothetical you offered, that would violate in California the state constitution and certainly would never be affirmed by a California court of review. But it does not appear that as of the current state of the Supreme Court law, that that is a rule that has been stated or that it's just simply too general to find that kind of narrow application. And ultimately that comes full circle into Yarborough again, and that is what are state courts permitted to do when we have very general rules? The hypothetical that you offer, Judge, is not that dissimilar to an Eighth Amendment claim, and that is certainly the Eighth Amendment says that you can't have cruel and unusual punishment, but the Supreme Court has held that that has to be more narrowly tailored to find an application. In fact, obviously in Andrade in particular, they found that there wasn't anything narrow enough or clear enough to find application under AEDPA review. In the Sanders case, a significant point was made that courts take real precautions in assuring that if there is a split in the jury and that it looks like the hung jury is coming up, the judge doesn't try to find out what the split was or who is causing the split. I agree. Here we have a very situation that's very similar to what Judge Bergeon was just saying. He's identified. He's the guy that's holding out. And so now he's removed. What does this say to the rest of the jury? And what does this say to the alternate that comes up? The court thinks that this guy is out of whack and get in there and get a unanimous verdict. Well, the federal courts have certainly, I agree with you, Judge, that the federal courts have certainly said a trial judge is not to be probing to find out who, what way a particular juror of whom it's been alleged is refusing to deliberate, which way that juror is going. And why is that? Well, I think the hypothetical you offered probably describes it best because you don't want to, you don't want the court to be probing to find out if there's holdout jurors and then have some sort of an implied effect on the remaining jurors. Again, that's really what happened here. It wasn't the court's fault, I don't think, but it surely was the situation that put that kind of pressure on the alternate juror and on the other jurors to say, all right, you're putting here in substitution for Mr. Sanchez because we want an unanimous verdict. That would be entirely speculative. There's nothing in the record to support that. Well, you've got 10 minutes of deliberation. We have 15 minutes, but that. Oh, 15 minutes. It's a distinction. How so? Well, I do want the record to be correct. I conceded an error that I made in my brief, and I want to be sure that the argument is specifically accurate. All right. But there was 15 minutes, and I'm going to leapfrog over to another point that relates to the question you're asking, and that is that there was some suggestion from the bench that perhaps there was an instructional problem here. The alternate juror was given the same instructions as the. . . No, no. The instructional problem was you kicked off that one juror, put another one on. Now, the one that came on didn't have the benefit of all the discussion and all the deliberation that went on before. That's true. And the judge is supposed to, it's my understanding, is supposed to tell the jury as it's reconstituted that they have to start their deliberations from the beginning. Anew. Huh? Anew. Anew or from the beginning. Is there something wrong with from the beginning? No. I'm just agreeing with you. I mean, you know, in the beginning. In the beginning. It doesn't say renewed. It says in the beginning. So, anyway, that didn't happen here. Didn't happen here. The judge did not. . . I mean, it's like he just put them on and, okay, go out. To the extent, the record does not indicate that there were any additional instructions. I agree with that. There's nothing in the transcripts to support that. But there is no constitutional requirement for that either. And that issue has not been raised. The issue before this court is whether that juror was properly dismissed or not. Or, let me rephrase that. The issue, that is not the issue before this court. The issue before this court is whether the California Court of Appeals determination that that juror was properly dismissed constitutes an objectively unreasonable application of Federal law as articulated or set forth by the United States Supreme Court. I understand the frustrations that the AATPA has created for the intermediate courts of appeal in the Federal system. But. . . You know, I just carefully read Judge Hall's. . . And her point is really quite different. She doesn't say. . . She does not, as I understand it, address my hypothetical. She says you can't have a. . . that there's no Supreme Court rule supporting the notion that you can't remove a juror if you know that he's the holdout. She doesn't say there's no Supreme Court, that it would not be unreasonable to say that you couldn't remove a juror because he's the holdout. That's quite different. In other words, they were arguing for a prophylactic rule in that case, that even if you otherwise had authority to remove the juror, if you know he's the holdout, then you can't do it because there's some danger that you're really doing it because he's the holdout. And that's the rule for which she says there's no support in the Supreme Court. And that may be right. But the notion that you could remove a juror because he's the holdout, I find extremely unlikely, even on an AATPA standard. Well, I do agree with your construction of the dissent in the case. But it's also dicta. And the issue in Sanders was not the removal of a holdout juror. The majority opinion there addressed and found that that was not the question. The question there in Sanders was whether the court had a right to dismiss a juror based on the prosecution's desire to have exercised a retroactive preemptory challenge based on information that had been withheld in board R. So to the extent that you articulate the rule, I agree with you, Judge. But to the extent that it has any application to the overall issues in Sanders or the AATPA. Well, the issue here, then, is whether you began by saying that there would be no, that there's, that we couldn't under AATPA even if we thought this person was being removed because of his position. We would still, it would still not be an unreasonable construction of clearly established rule to remove him. And the record here is, you know, kind of marginal, I'd say. And maybe because it's marginal, maybe you prevail as to, you know, what was really happening here. But there is a flavor, certainly, that he was being removed because of his position rather than because of his behavior as a juror. That's really the issue, it seems to me. I think that's a remarkable assertion or characterization to make of a sitting trial court judge in California. Well, that's what I just said. I said it was marginal and I wasn't asserting it. Okay. But go ahead. What did you just say? I think that's a remarkable characterization to make of a sitting trial court judge in California. Like what? That the trial court judge. Say it in plain English. To say that that judge removed him, that marginally it suggests that the judge removed that juror because he was a holdout. This is probably an inadequate record. Yeah, that goes on all the time. Not all the time, but it's not infrequent, you know. I've practiced in the state courts for 14 years. I've done a lot of trial work. I haven't seen it occur. Well, but you don't know what goes on in their minds, do you? In whose minds? In his mind. No, I don't, but I've never had a juror that's been asked that. Everybody wants to get the case over with. Well, certainly they do. But this judge made an inadequate record. Here's a holdout. Here's a holdout. And then he's brought in and he's questioned, and the judge says, I'm kicking you off this jury for cause. Well, there's a gap in that statement, Your Honor, and that's the fact that the juror in question said, I have not discussed the evidence with the other jurors, I don't care about the law, and I don't care about your instructions. What was the judge doing? Did he say, I have not discussed this with the other jurors? That's what he said. I didn't see that in there. I refer to the excerpts of record. He did not care about the law, did not care about the instructions, and he had not engaged in any discussions with other jurors regarding his view of the evidence. Now, he did indicate that he had listened to other jurors talk about the evidence. All right. What puzzles me about the situation is the criticism is that he was not engaging in this five-hour deliberation, right? Wasn't it five hours? I think so. All right. So that was the criticism of him. Yet the alternate juror was put on there and obviously did not take part in five hours worth of deliberation. He got 15 minutes. So the thing that this juror, Sanchez, was being kicked off for was holding an opinion and holding to it for five hours, that there wasn't force. I disagree. What? He was not kicked off because he held an opinion. Well, I didn't say because. I said that what was happening was he didn't deliberate for a continual five hours, asserting that he didn't think there was enough force. Now, how much if you were sitting there and you're convinced that there was no force, which the Court of Appeals said there was no force, for five hours, how many times do you have to keep saying this to be held on to the jury? Well, let me correct one thing first, Your Honor. The Court of Appeals did not say there was no force. They said that the jury should have been given instructions on whether there was force or not and did give the prosecution an option of retrying him. So that was not a legal finding. It was just the conclusion that there was instructional error. And how much should he have engaged in deliberations? I don't know. But that's not the point when we're talking about an AEDPA review of a state court finding. The state court, the trial court, interviewed the foreperson and arguably I don't think based any of his ultimate dismissal of the juror on what the foreperson said because that's not what he recited when he made his ruling. He then interviewed the juror in question, a juror who, according to the trial judge, was hostile, was gesturing, was invoking irrelevant points about tithing to God, who was vague. Was he saying that was the reason that I was holding out was because of tithings to God? No. He had sometime during that five-hour celebration had made that comment. But as I understand it, what he was saying is there was no force. I don't agree with that. When the trial court judge asked him under what context did you make that statement, he said, well, when we were talking about whether there was grand theft or it was robbery, he said, well, and I said, everyone's a robber if they don't tithe to God. We're all robbers. But it was an irrelevant comment to any of the issues that were raised. So can you discharge a jury for having sometime during five-hour deliberation made an irrelevant comment? No. Under Penal Code section 1089, under California law, you can only discharge a juror  So what's interesting here is there's sort of a model of deliberation. It's really the question that Judge Huggs is asking. Ultimately, what this fellow said was, let me correct that comment. I employed it as you stated, i.e., I listened to the law, and so when I came out with my decision. Now, his interpretation is this is his business, it's not mine. And that's what I meant when I said that it was a decision of whatever it is. And that's when I said you don't care about the law. And he said, what I said is I've already made my decision. Whatever he decides is whatever is his is his. All right. So essentially, the portrayal is that this juror came into the room, he listened to what the judge said, he came to a conclusion about whether there was force or not. And when people tried to persuade him, he said, well, that may be your understanding of the law, but I don't want to hear about it anymore because I, you know, I've thought about it and this is what I've decided now. So the question is, and I don't know the answer. It's kind of strange because I don't know what the answer is. Has he fulfilled his duty as a juror if he just sits there for the next six days and says, I'm sorry, you know, I've thought about it, and, you know, that's it. You can sit here and talk to me all you want, but I've come to my decision? Or is that a reason for removing him? I agree with you. I've asked the same question myself, Judge, and that is, does this case ultimately turn in as a matter of state law on what deliberation means? And I also agree with the implication of your question, which is that that is one possible, not an unreasonable construction of the record. But it's not the only possible reasonable construction of the record. It's equally possible and reasonable that the trial court judge presumed to have followed the law, to know and follow the law, interviewed the juror, was in a far better position than this court is in sitting in review of a record to determine what that juror's state of mind was, and have determined that that juror, in fact, was not fulfilling his obligations. And if it's not an objectively unreasonable conclusion to come to, then there's not an unreasonable determination of the facts when the state court, and then the state court's ultimate holding that there was not a constitutional violation is not based on an unreasonable determination of the facts. Is this, Judge Huck asked earlier whether if we thought there was an issue here, whether it would be a structural error or whether prejudice harmless error would apply. I think there's law that harmless error applies. Is that right? That's my recollection. I do not believe this is structural error. And I think that goes back to a point I made before, which is that there is no constitutional right imposed upon the states for unanimous verdicts. So that would render it not structural error. It would be a harmless error analysis. And under Brecht, as has been already discussed with opposing counsel, ultimately the state court of review reversed the robbery conviction and ordered the prosecution to either retry him or have him stand convicted of grand theft in person. And that was obviously what the state, what the prosecution chose to do. So there doesn't appear to be any prejudice that this defendant suffered. We can't really be sure. Although it appears that that's where the dispute was, we can't be sure about that. No. I agree with you that the record is unclear. And I think I tried to convey that uncertainty in my brief. As the magistrate judge Zaresky pointed out in his R&R, I inherited this case from someone, another deputy in the office, who did not argue mootness. And so we felt that the best approach was to address that matter in terms of prejudice. And if we wanted to know the answer to that question, would it be appropriate to have a hearing and ask the juror? Probably not. Absolutely not, Your Honor. I cannot seek any basis for this Court to request a hearing. Let's leave aside your legal issues, but let's assume that we thought that there was a constitutional problem. And as to whether there's prejudice, it would depend on whether there was a split only on the force or on both issues. But it's inappropriate to ask a juror that, right, even now. I would think so. It goes into areas of jury deliberations that a court's not permitted to inquire  I see my time is up. If there's any further questions. I have one more question. You mentioned that the issue was whether the judge had found the juror had fulfilled his or was fulfilling his obligation. But isn't the key, what is the obligation? That is the key question under state law. Well, I Under the construction of Penal Code Section 1089. It is not the key question in terms of doing an AEDPA review. Well, I don't know. But what there is a significant federal law question as to what a reasonable jury can amount to under the Constitution. I think if I read the cases correctly, at least two panels of this Court have held that Section 1089 is not unconstitutional on its face. And that one of the courts, I think it was Presby-Marshall, and another court has held in Brewer that this, exactly this type of scenario does not raise a constitutional question. Thank you very much. Briefly in response, I believe that in the case of Sanders, this Court inquired indirectly whether or not, under what parameters can a juror be dismissed or discharged. And in the case of Sanders versus Lamarck, the Court indicates that the protection of holdout jurors from coercion has been a fundamental part of federal jurisdiction. And, of course, quotes Bradsfield versus United States U.S. Supreme Court case. And that goes back to our position that once Sanchez was removed and a replacement juror came into the deliberation, whether or not that was, in fact, a coercive type of deliberation that the new juror was compelled to deliberate under. Also, the record is clear on the fact of whether or not Mr. Sanchez's belief of tithing, if that is, if it was just a comment or if it were his belief, if that was a causal relationship to his holding out. And it was very clear in the record that Mr. Sanchez indicated. I can't find it. I can't find it in the record, but he did clearly indicate that his belief of tithing had no consideration in his applying the evidence to the law. And at Reporters Transcripts 276, he was very clear in indicating that he had considered the evidence and the law. He was advised by the court what the obligation of a juror was. The court clearly told him that he had two duties to perform. First, to determine the facts from the evidence received in the trial and not from any other source. And the court explained what a fact is. And the second duty, you must apply the law that I state to you to the facts as you determine them in that way at your verdict. Mr. Sanchez clearly indicated in response to the courts advising him of his two-component duty was, let me correct the comment. I employed it as you stated. So ---- I just want to ask one wrap-up question because you're out of time. Did you ---- Judge Pegersen, I guess, earlier had asked you about the different question of whether once Mr. Sanchez was dismissed, whether there was adequate protection with regard to the behavior of the ---- and the role of the alternatura. But have you made that argument here? You made a separate ---- Yes, Your Honor. I did.  In my brief, in the supplement, in the opening brief, I made reference to the fact that based on the number of hours of deliberation the day before that Mr. Sanchez was dismissed. But you made that argument basically as part of the prejudice argument on the other  I did. In other words, and did you exhaust that question that dealt with the procedures with regard to the alternatura? Was that issue raised in the State court? Your Honor, I believe it was alluded to in the argument in the State court. And I think the ---- it was alluded to by a comment indicating that there was no subsequent instruction by the trial judge so that the replacement juror understood what his duties were or her duties were. And secondarily, I think there was also comment in reference in the State court documents on behalf of the petitioner that the deliberations lasted a very short period of time, which would negate maybe some deliberation or perhaps any significant deliberation. Refresh my memory. This hearing concerning the holdout juror, where did that take place? It took place in Chambers, Your Honor, as I recall. And who was present? And the judge brought in the complaining juror separate from the juror who was eventually ousted. But it did take place in Chambers with all parties with the exception of Mr. Weaverton. Our opposing counsel has stressed the 1089 section. And I was reading that the court has defined that the juror is unable to perform his or her duty. Was that what the judge said, or was it that the juror had not been performing his or her duty? Your Honor, the way I interpret what the trial judge said is that he basically found Mr. Sanchez to be a hostile person and supported that conclusion with statements that he had raised his voice, had pointed his finger, not saying that he had pointed his finger at the judge, mind you, but that he had pointed his finger somewhere and other gestures. Did he find that he was unable to perform the duty? I see nothing in the trial judge's language which indicates that he was unable to perform his duties. He did say he is refusing to follow the law. However, Mr. Sanchez made it clear that he had followed the law. So given the fact that following the law is one of the two duties that the trial judge pointed out to Mr. Sanchez, the trial judge did indicate to that conclusion that he had refused to follow the law. However, I don't think the facts bear out that conclusion, and I think that conclusion is an unreasonable conclusion based on the facts. And unless there are other questions, I will stand. Thank you very much. I will stand submitted. We'll call our hearns versus here. The hearing is adjourned. The hearing is adjourned.
judges: Hug, Pregerson, Berzon